## TEAGARDEN v. GRAHAM AND OTHERS.

ARREST.—*Justification.—Military Order.—Evidence.*—A sergeant of volunteers in the army of the United States in the last war, having received a written order from the proper military authorities to arrest certain deserters, in this State, and any others of that class, and all persons who should interfere with such arrests, made the arrest of said deserters at night; and the party having them in charge, under command of said sergeant, was fired upon from a wood, not far from the residence of one A., who was treasurer of a treasonable organization, the object of which was the protection of deserters, and who had been fined in the United States Court upon a plea of guilty to an indictment for harboring deserters. Upon the fire being returned, the assailants fled, and the soldiers, after proceeding a short distance, about three or four o'clock in the morning and before daylight, discovered A. crossing the road from the direction in which the firing had occurred, and halted and searched him, finding nothing but a part of a box of caps, though he subsequently stated that he dropped a revolver when he stopped. He seemed fatigued, and was "puffing and blowing." He was thereupon arrested and secured with ropes by the soldiers under command of said sergeant, and taken by them beyond the county, to the military headquarters of the district, where he was discharged by the provost marshal, after a short detention. Suit by A. for damages, against said sergeant and those under his command.

*Held,* that the written order for the arrest of the deserters having been shown to be lost, evidence of its contents was admissible.

*Held,* also, that the defendants were justified.

APPEAL from the Vermillion Circuit Court.

RAY, J.—The complaint is as follows:—

"The plaintiff complains of the defendants, and says that the said defendants with force and arms assaulted the said plaintiff, to wit, at the county of Fountain and State aforesaid, on or about the 28th of February, 1864, and then and there seized and laid hold of the said plaintiff, and then and there, with great force and violence, pulled and dragged about the said plaintiff, and then and there forced and compelled the said plaintiff to go off and from his said premises, near to his own dwelling-house, in the county aforesaid, and forced and compelled him to go in and through the woods, in the night time, to a certain place in said county known as Steam Corners, and then and there tied and bound the

said plaintiff with ropes, bandaging his arms behind him, the said plaintiff; and then and there the said defendants Barton W. Graham and Mitchell Conover, with force and arms, forced and compelled the said plaintiff to go from and out of said county, to the city of Lafayette, in the county of Tippecanoe, in the said State of Indiana, when and where he was kept and detained in prison, without any reasonable or probable cause whatever, for a long space of time, to wit, for the space of twenty-four hours next following, contrary to the law and customs of the State and against the will of the plaintiff, whereby the plaintiff was then and there not only greatly hurt, bruised, and wounded, but was also then and there greatly exposed and injured in his credit and in, to wit, in the sum of five thousand dollars; wherefore the plaintiff demands judgment for five thousand dollars and other relief."

On the trial, there was proof that Graham was a sergeant in the 63d Regiment of Indiana Volunteers, in the service of the United States; that said Graham was sent home to recruit for his regiment in the field during the war, and was ordered to arrest deserters and all who should interfere with such arrests; that he made such an arrest at night, and while passing through a wood, not far from the plaintiff's residence, the party having the deserters in charge was fired upon from the woods, and upon returning the fire, the assailants fled; that, proceeding a short distance, the soldiers discovered the plaintiff crossing the road from the direction where the firing had occurred, to a neighbor's house; he was halted and searched, and nothing was found but a part of a box of caps, though a witness testified to the plaintiff's subsequent statement, as the witness remembered it, that he dropped a revolver when he stopped; that the plaintiff seemed to be fatigued, and he "was puffing and blowing." It was also testified, that the plaintiff was treasurer of a treasonable organization, whose object was the protection of deserters, and that plaintiff had been indicted in the United States Court, and had pleaded guilty to a charge of harboring

deserters, and had been fined therefor. The time of his arrest was about three or four o'clock in the morning and before daylight. The defendant Graham stated, that he received a written order from the proper military authorities, directing him to arrest the deserters whom he had seized, and any others of that class, and also to arrest all persons attempting to interfere with such arrests. The plaintiff was fastened with ropes and taken to Lafayette, where he was discharged by the provost marshal, after a short detention.

There was an objection, on the trial, to the evidence of the contents of the order for the arrest of the deserters, but as the written order was shown to have been lost, the evidence was properly admitted.

There was a finding for the defendants.

The motion for a new trial is on the ground that the evidence does not sustain the verdict.

The law, as stated by Allen, in his work on the duties and liabilities of sheriffs, p. 61, is, that "if an innocent person is arrested upon suspicion by a private individual, such individual is excused if a felony was in fact committed, and there was reasonable ground to suspect the person arrested." It was so held in *Holley* v. *Mix*, 3 Wend. 350. See, also, 1 Chit. Crim. Law, 15.

In this case there had been a felony committed in the presence of an officer in the service of the United States; and that officer was authorized by an order from his superior officer, who derived his authority from the President of the United States, as Commander in Chief of the army, to arrest any one interfering with the exercise of his authority and take him before the nearest military authority. The officer and those under his command were simply intending, in good faith, to obey this order; for there was evidence enough to show a strong probability that the plaintiff had so interfered.

By the fourth section of the act of March 3d, 1863, U. S. Stat. at Large, vol. 12, p. 756, Congress has expressly recognized the binding force of such orders, under the au-

thority of the President, and declared that they shall constitute a full defense for any act done under them. The arrest in this case would have been justified if made by any person, without authority, and we are not prepared to hold the removal from the county to the military headquarters of the district an act rendering the officer or those under his command liable to an action for damages. The Supreme Court of the United States have the power to declare this act of Congress unconstitutional; we shall not anticipate such action upon any ground pointed out by appellant or that suggests itself to us.

Judgment affirmed, with costs.

*J. Ristine,* for appellant.

*W. H. Mallory* and *B. E. Rhoads,* for appellees.